RECORD NO. 13-2137

In the

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔉𝔬𝔯 𝔗𝔥𝔢 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

**BEYOND SYSTEMS, INC.,**

*Plaintiff-Appellant,*

v.

**KRAFT FOODS, INCORPORATED; VICT. TH. ENGWALL & CO.;
KRAFT FOODS GLOBAL, INCORPORATED; and
CONNEXUS CORPORATION,**

*Defendants-Appellees.*

**ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT**

─────────────

**BRIEF OF APPELLEE CONNEXUS CORP.**

─────────────

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
(202) 344-4000

*Counsel for Connexus Corp.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2137__    Caption: __Beyond Systems, Inc. v. Kraft Foods, Inc., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Connexus Corporation__
(name of party/amicus)

_____

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Epic Media Group, Inc. is the parent company of Connexus, and Connexus is a wholly owned subsidiary of Epic Media Group, Inc.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

10/28/2013 SCC                        - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Ari N. Rothman          Date:     2/24/2014

Counsel for: Connexus Corporation

## CERTIFICATE OF SERVICE
****************************

I certify that on _____2/24/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

See Certificate of Service appended to brief.

/s/ Ari N. Rothman                          2/24/2014
(signature)                                  (date)

- 2 -

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS

STATEMENT OF THE ISSUE ..................................................................3

STATEMENT OF THE CASE AND FACTS ...........................................3

SUMMARY OF THE ARGUMENT ........................................................9

ARGUMENT ...........................................................................................10

    A.    Volenti Non Fit Injuria is a Valid Defense to Anti-Spam Causes of Action .................................................................10

    B.    The Undisputed Facts Show that BSI Consented to Receive the Emails ...................................................................13

    C.    BSI's Reasons Supporting Reversal Are Wrong ..............................15

CONCLUSION .......................................................................................19

REQUEST FOR ORAL ARGUMENT ..................................................19

# TABLE OF AUTHORITIES

**Page**

### CASES

*Angelucci v. Century Supper Club,*
  158 P.3d 718 (Cal. 2007) ....................................................................14

*Brazerol v. Hudson,*
  277 A.2d 585 (1971) ............................................................................8

*Gordon v. Virtumundo,*
  575 F.3d 1040 (9th Cir. 2009) ........................................................10, 16

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ...........................................................................13

*Hedding v. Pearson,*
  173 P.2d 382 (Cal. Dist. Ct. App. 1946) .............................................9

*Janelsins v. Button,*
  648 A.2d 1039 (Md. Ct. Spec. App. 1994) .......................................8, 15

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (2011) .......................................................................10

*MaryCLE, LLC v. First Choice Internet, Inc.,*
  890 A.2d 818 (Md. Ct. Spec. App. 2006) ........................................10, 15

*Munson v. Del Taco, Inc.,*
  208 P.3d 623 (Cal. 2009) ...................................................................13

*Nader v. Blair,*
  549 F.3d 953 (4th Cir. 2008) ...............................................................7

*Pinney & Topliff v. Chrysler Corp.,*
  176 F. Supp. 801 (S.D. Cal. 1959) ......................................................9

### STATUTES

Bus. & Prof. Code § 17200, et seq. ...................................................10

Cal. Civ. Code. § 3515 .......................................................................9

# TABLE OF AUTHORITIES
## (continued)

Page

**RULES AND REGULATIONS**

FED. R. CIV. P. 56(c)..........................................................................7

**OTHER AUTHORITIES**

John D. Lawson, "The Principal Maxims of the Law," in Leading Cases
    Simplified (1882)............................................................................8

Restatement (Second) of Torts § 892(1) (1979)............................................8, 9

Restatement (Second) of Torts § 892A (1979).............................................8

## STATEMENT OF THE ISSUE

Whether the district court properly found that the doctrine of *volenti non fit injuria*, which precludes the "maintenance of an action for a wrong by one who has consented to the act which has occasioned his loss," barred Beyond Systems, Inc.'s claims under the California and Maryland anti-spam statutes and warranted summary judgment in Connexus's favor where the undisputed facts established that Beyond Systems consented to receive the emails over which it sued Connexus.

## STATEMENT OF THE CASE AND FACTS

Beyond Systems ("BSI"), an alleged Internet service provider run by its sole owner and employee Paul Wagner, is not an innocent victim of unsolicited commercial emails entitled to tens of millions of dollars in statutory damages under the Maryland and California anti-spam laws as it tried to portray in the district court and now in its appeal. Instead, the undisputed facts in the district court showed that BSI/Paul Wagner consented to receive from his brother Joe Wagner, the sole owner of another alleged ISP called Hypertouch, Inc., virtually all of the emails over which BSI/Paul Wagner sued Connexus, and intentionally collected additional emails to file this and other lawsuits. Accordingly, this case is about whether the district court properly granted post-trial summary judgment in Connexus's favor under the doctrine of *volenti non fit injuria* (or the consent defense) given the following undisputed facts:

1.      On February 8, 2002, the Maryland Anti-Spam Statute ("MCEMA"), which "[f]orbids sending commercial e-mail with 'unauthorized, misleading, or false information,'" was introduced in the Maryland legislature. (JA 508; JA 361-62.)  The Maryland legislature signed MCEMA into law on May 6, 2002, and the law went into effect on October 1, 2002. (JA 508.)

2.      MCEMA "gives victims the right to go to court to seek damages that they might not otherwise be able to seek." (JA 496.)   Likewise, the California legislature passed California's anti-spam statute to prevent "increasing drain on corporate budgets" and "lost productivity." (JA 497.)

3.      After May 2002, Paul Wagner and his brother Joe Wagner of Hypertouch "talked about the law a lot." (JA 360.)

4.      In 2002, BSI/Paul Wagner and Hypertouch/Joe Wagner entered into an agreement for BSI "to receive all the Hypertouch spam that you [Joe Wagner] routed to him [BSI/Paul Wagner]." (JA 372-73.)  Joe Wagner testified:

> Q: And you knew at that time that the e-mails, the Hypertouch dot com e-mails that you would be routing [to BSI] contained spam; is that right?
>
> A: Absolutely.
>
> Q: And you asked Beyond Systems to receive those e-mails, right?
>
> A: Yes.
>
> Q: And Beyond Systems said yes, correct?
>
> A: Yes.

> Q. Okay. And according to you, Beyond Systems knew in 2002 when it agreed to receive those e-mails that those e-mails would receive spam, correct?
>
> A: Yes.

(JA 364-65, 372-73.)

5.    When problems arose with the sending of spam from Hypertouch to BSI, the brothers were quick to resolve the issue to keep the spam "flooding" into BSI. (JA 304-05, 377; JA 530, 535, 540, 541, 548.)  For example:

a.    In one e-mail between the brothers, Paul Wagner complained to Joe Wagner that he hadn't received any Hypertouch spam in the previous three days. (JA 540.)

b.    In another e-mail, Paul Wagner notified Joe Wagner, "I am once again not receiving Hypertouch spam .... Can you check whether you are forwarding me such emails, please ...?" (JA 541.)  When questioned about this e-mail at trial, Joe Wagner testified:

> Q:    And so, this [e-mail] isn't, your brother isn't complaining here that he's receiving too much spam. He's complaining that he's not receiving any Hypertouch spam, correct?
>
> A:    He's giving me a heads up that there seems to be something wrong.
>
> Q:    And what's wrong is that he's not getting Hypertouch spam?
>
> A:    He's not getting the spam, yes, from my servers.

-3-

> Q:     And he's not getting the Hypertouch spam that you agreed to route to him, correct?
>
> A:     That I asked him to, if I could route to him, yes.

(JA 377.)

c.     In an e-mail chain titled "mail is back to forwarding," Paul Wagner wrote to Joe Wagner "Thanks. Now that I think about it, the number of spams to support@beyondsystems.net did slow to a virtual standstill for a few hours. I have noticed that it sometimes takes a couple of hours for a test email message addressed to a Hypertouch recipient to arrive ... at [BSI] .... Not sure why .... , [but] As Steve's boss says: 'Good is good enough.'" (JA 530.)

d.     In another e-mail, whose subject line was "spam should be flowing again," Joe Wagner wrote to his brother "Hypertouch is forwarding to its new server, which is forwarding to support@beyondsystems.net," to which Paul Wagner responded, "No emails have arrived yet – but perhaps it takes a moment. Thanks – I'm heading to bed in a few minutes." The following day, Joe Wagner replied, "now?" to which Paul Wagner responded "It's a floodin' all right! Thx ..." (JA 535; JA 370-71.)

e.     In another e-mail, Joe Wagner noted that the "spam should be flowing now ...." (JA 548.)

6.     BSI/Paul Wagner wanted to receive e-mails to file lawsuits. In August 2002, Joe Wagner e-mailed Paul Wagner, that "[a]fter more than a year of working

-4-

on actions on spammers, I've finally filed my first two in the small claims court of San Mateo County, California. ... My hope is to refine a collection of small claims motions so spammer suits are well-nigh cut and paste." (JA 508.)

7.    A few weeks later, on September 17, 2002, BSI/Paul Wagner purchased a MacIntosh e-mail server, called the "Little Mac," from Joe Wagner for $1, knowing that it was running a mail server that contained spam. (JA 356-59; JA 510.)

8.    When BSI and Hypertouch discovered that a default setting on their server application, CommuniGate Pro, was rejecting spam, both BSI and Hypertouch turned off the setting so that all spam would be received and stored:

> Q:    So there was a setting in CG Pro that allowed you to bounce a fair bit of e-mail and specifically the fraudulent ones, correct?
>
> A:    That would include fraudulent ones, yes.
>
> Q:    And that setting was turned off?
>
> A:    Correct.
>
> Q:    By Beyond Systems?
>
> A:    Yes, it was turned off in both of our systems.

(JA 308-11, 367-68; JA 537.)

9.    BSI/Paul Wagner and Hypertouch/Joe Wagner upgraded their computer equipment so their respective companies could handle even more spam. (JA 542; JA 374-77.)

10.    BSI does not use spam filters or any other mechanism to stop the receipt of unwanted e-mails. (JA 266.)

11.    BSI and Hypertouch set up wildcard accounts with the specific purpose of collecting spam. (JA 310-11, 313-14.) Wildcard accounts capture e-mails that are sent to a domain name, but are not addressed or destined for any specific customer. (JA 362.)

12.    Hypertouch and BSI could have bounced or rejected e-mails sent to the wildcard accounts, but instead, made sure the e-mails could be sent to BSI 24 hours a day without requiring that anyone actually read the e-mails. (JA 366-67.) As with other e-mail directed to Hypertouch, when those wildcard e-mails were not reaching BSI's servers, Hypertouch made corrections so the e-mails could reach BSI. (JA 314-15.)

13.    Hypertouch set spam traps by publishing fictitious e-mail addresses on its website knowing that spam would be delivered to those e-mail addresses and then delivered to BSI. (JA 331-32.)    According to BSI's own expert, Peter Resnick, a spam trap is "an email address ... whose sole purpose is to cause spammers to send spam to it."  (JA 431-32.)

14.    BSI also employed a "systematic set of opt-outs" using spam traps, knowing that by clicking on opt-out links, those spam traps would "generate a huge volume more spam." (JA 421.)

-6-

15.    In one e-mail Joe Wagner wrote to Paul Wagner, "this is excellent ... thanks a bunch ... this really rocks.  Now I can say with firsthand knowledge that removes – just gets one's address signed up for more spam ...." (JA 511; JA 420-21.)

16.    At trial, the Court instructed the jury that a "bona fide ICSP [Interactive Computer Service Provider] and EMSP [Electronic Mail Service Provider] is an entity that primarily and substantially provides the services set forth in the Maryland and California statutes .... An entity is not a bona fide ICSP or EMSP if it primarily or substantially engages in bringing anti-spam litigation." (JA 438-39.)

17.    The jury found that BSI is not a bona fide ICSP under Maryland law or a bona fide EMSP under California law, and thus, BSI is an entity that "primarily or substantially engages in bringing anti-spam litigation." (JA 445.)

## <u>SUMMARY OF THE ARGUMENT</u>

A party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Nader v. Blair,* 549 F.3d 953, 958-59 (4th Cir. 2008). The district court properly granted summary judgment, and this Court should affirm its ruling, because (1) *volenti non fit injuria,* also referred to as the consent

-7-

defense, is a valid defense to the Maryland and California anti-spam statutes as a matter of law, (2) the undisputed facts show that BSI consented to receive the emails over which it sued Connexus, thereby warranting summary judgment in Connexus's favor under the *volenti non fit injuria* doctrine, and (3) none of BSI's arguments warrant reversal.

## ARGUMENT

### A.    *Volenti Non Fit Injuria* is a Valid Defense to Anti-Spam Causes of Action.

*Volenti non fit injuria* provides that "[t]he man who is the author of his own hurt has no right to complain." John D. Lawson, "The Principal Maxims of the Law," in Leading Cases Simplified (1882).  Thus, a fundamental principal of tort law is that "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." Restatement (Second) of Torts § 892A (1979).  The Restatement defines consent as "willingness in fact for conduct to occur." Restatement (Second) of Torts § 892(1) (1979).

Maryland law is in accord with the Restatement: "[t]hose who, with full knowledge, assent to the invasion of their interests may not complain." *Janelsins v. Button*, 648 A.2d 1039, 1042 (Md. Ct. Spec. App. 1994) (plaintiff cannot recover for battery where the plaintiff consented to it) (citation omitted); *Brazerol v. Hudson*, 277 A.2d 585 (1971) (plaintiff who moved her car to allow dump truck to

enter onto her property could not sue dump truck operator for trespass). Consent also "may be manifested by action or inaction and need not be communicated to the actor." Restatement (Second) of Torts § 892(1) (1979).

California law also is in accord with the Restatement and has codified the defense: "He who consents to an act is not wronged by it." Cal. Civ. Code. § 3515. Section 3515 is "a codification of the maxim volenti non fit injuria, which is a basic tenet of [California] jurisprudence. It precludes the maintenance of an action for a wrong by one who has 'consented to the act which has occasioned his loss.'" *Pinney & Topliff v. Chrysler Corp.*, 176 F. Supp. 801, 810 (S.D. Cal. 1959) (applying California law) (citing *Edward Brown & Sons v. San Francisco*, 223 P.2d 231, 235 (Cal. 1950)). "One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger for the ensuing injury." *Hedding v. Pearson*, 173 P.2d 382, 384 (Cal. Dist. Ct. App. 1946). Thus, the *volenti non fit injuria* doctrine, or consent defense, is a valid defense to torts under Maryland and California law.

*Volenti non fit injuria* is a valid defense to the Maryland anti-spam statute because the statute prohibits tortious conduct. According to the Maryland Court of Special Appeals, "MCEMA violations, like violations of the Consumer Protection Act, are 'in the nature of a tort.' Indeed, both statutes regulate[ ] false and deceptive trade practices … the same principles that when faced with questions of

-9-

individual liability for torts apply here." *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 846 (Md. Ct. Spec. App. 2006). The defense also applies to the California anti-spam statute which, like the Maryland statute, sounds in tort. For example, the California Supreme Court stated that, "Proposition 64 clearly was intended to abolish the portions of the UCL [Bus. & Prof. Code § 17200, et seq.] and false advertising law [§ 17500, et seq.] that made suing under them easier than under other comparable statutory and common law torts." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 335 (2011).

*Gordon* is instructive, as it held that plaintiff lacked standing as an ISP under CAN-SPAM (the federal analog to the California and Maryland anti-spam statutes) because plaintiff undertook efforts to receive the e-mails over which it sued and therefore fell outside of the class of entities to which Congress granted a private right of action. *Gordon v. Virtumundo*, 575 F.3d 1040, 1055-57 (9th Cir. 2009). Among other things, the *Gordon* plaintiff configured his computers to receive e-mails sent to "unused inboxes" and "refuse[d] to implement spam filters in a typical manner or otherwise make any attempt to block allegedly unwanted spam or exclude such messages from users' e-mail inboxes." *Id.* at 1045-46, 1055. The court found that plaintiff lacked standing as an ISP because it "purposefully avoided taking even minimal efforts to avoid or block spam messages. Instead, Gordon devotes his resources to adding his clients' e-mail addresses to mailing lists and

-10-

accumulating spam through a variety of means for the purpose of facilitating litigation." *Id.* at 1052 (quotations and citations omitted). The court noted that "it is highly significant that the burdens Gordon complains of are almost exclusively self-imposed and purposefully undertaken." *Id.* at 1057. Judge Gould wrote in his concurring opinion that the common law "did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award," and that although plaintiff sued under a federal statute, "on close examination, many distinctions between common law and statutory law disappear." *Id.* at 1067-68.

Given that *volenti non fit injuria* is a valid defense to the Maryland and California anti-spam statutes as a matter of law, the district court properly granted summary judgment in Connexus's favor if the undisputed facts showed that BSI/Paul Wagner consented to the harm over which it complaints – here – the receipt of the emails over which BSI/Paul Wagner sued Connexus. The undisputed facts did show that BSI consented to receive the emails over which it sued Connexus. Thus, the district court properly granted summary judgment in Connexus's favor.

**B.    The Undisputed Facts Show that BSI Consented to <u>Receive the Emails.</u>**

The undisputed facts proved that BSI/Paul Wagner consented to the alleged harm about which it complains. Beginning in 2002 (the year the Maryland

legislature passed MCEMA), BSI entered into an agreement with Hypertouch/Joe Wagner for Hypertouch to send e-mails to BSI, knowing that the e-mails contained spam. BSI quickly worked with Hypertouch to resolve issues that arose with the sending of e-mails to ensure the spam kept "flooding" into BSI. (*Id.* at ¶ 5.)  BSI/Paul Wagner also purchased the "Little Mac" from Joe Wagner for $1, knowing that its mail server contained spam. (*Id.* at ¶ 7.)  BSI failed to use spam filters or any other mechanism to stop the receipt of unwanted e-mails. (*Id.* at ¶ 10.) Indeed, when BSI/Paul Wagner and Hypertouch/Joe Wagner discovered that a setting on their server application, CommuniGate Pro, was rejecting spam, they both turned off the setting. (*Id.* at ¶ 8.)  BSI/Paul Wagner and Hypertouch/Joe Wagner also upgraded their computer equipment so their servers could handle even more spam. (*Id.* at ¶ 9.)  Additionally, BSI deployed spam traps to capture as much spam as possible by setting up wildcard e-mail accounts and clicking on opt-out links, knowing that the spam traps would "generate a huge volume more spam." (*Id.* at ¶¶ 11-14.)  Unquestionably, the facts – none of which BSI disputes – are that BSI knowingly consented to receive the emails for which it seeks to hold Connexus liable, thereby precluding BSI from pursuing its claims against Connexus as a matter of law.  Thus, the district court properly granted summary judgment in Connexus's favor.

### C.    BSI's Reasons Supporting Reversal Are Wrong

BSI provided no reasons to reverse the district court's granting of summary judgment.    Foremost, BSI's argument that applying *volenti non fit injuria* "sabotages the very policies that the CA-UCE and MD-CEMA seek to advance" including "private enforcement" where "the plaintiff's willingness to suffer legal injury is motivated by the corresponding statutory remedy" is wrong.    The Maryland statute's legislative history shows that the legislature did not intend to license professional plaintiffs to intentionally receive emails and then sue over them because the Maryland statute "gives <u>victims</u> the right to go to court."  (JA 496 (emphasis added).)   BSI is no "victim" but instead consented to receive the emails and, as the jury found, is "primarily or substantially engages in bringing anti-spam litigation." (SOF ¶¶ 16-17.)  Likewise, the California legislature passed California's anti-spam statute to prevent "increasing drain on corporate budgets" and "lost productivity." (JA 497.)   The legislatures did not license professional plaintiffs and BSI failed to cite any legislative history showing otherwise.   And, the cases upon which BSI relies do not support its argument either because none of them involved applying the consent defense to any tort.   *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 374 (1982) (considering standing under the Fair Housing Act); *Munson v. Del Taco, Inc.,* 208 P.3d 623 (Cal. 2009) (considering whether a plaintiff must show intentional discrimination to maintain a claim under

-13-

California's Unruh Civil Rights Act); *Angelucci v. Century Supper Club,* 158 P.3d 718 (Cal. 2007) (considering whether a plaintiff must demonstrate that they affirmatively requested nondiscriminatory treatment and were refused to maintain a claim under California's Unruh Civil Rights Act).

BSI's argument that *volenti non fit injuria* cannot apply because "BSI's injury under either statute depends entirely on another party making the deliberate decision to initiate and transmit deceptive spam," and that "BSI can only receive deceptive spam if a third party—here, Defendants—decides to send it to BSI" is wrong.  The undisputed facts are that BSI/Paul Wagner's brother, Hypertouch/Joe Wagner, sent the emails to BSI/Paul Wagner with BSI/Paul Wagner's prior express consent and knowledge that the emails would be what the brothers believed to be "spam."  BSI/Paul Wagner also set up spam traps, and undertook efforts to intentionally receive as many emails as possible for lawsuits as shown herein.  On these undisputed facts in the district court, BSI received the emails only because it consented to receive them from Hypertouch after Hypertouch first received them.  For these same reasons, BSI's contention that "[n]either California nor Maryland law requires a plaintiff to attempt all means of shielding itself from another's unlawful intentional conduct before it can seek to hold that person accountable in civil litigation" also is wrong in that BSI's intentional consensual acts bar its claims under the consent defense.

-14-

BSI's contention that "assumption of risk is not a defense to intentional tortious conduct" misses the mark. Connexus never argued, and the district court did not rely on, assumption of risk to bar BSI's claims. As the Maryland Court of Special Appeals held in the very case upon which BSI relies, "assumption of risk is applied more frequently in negligence actions while consent is more typically applied in intentional tort actions." *Janelsins v. Button*, 648 A.2d 1039, 1042 (Md. Ct. Spec. App. 1994). Thus, *Janelsins* holds that consent does apply to intentional torts, and *Mary CLE* – another Maryland Court of Special Appeals case – expressly held that "MCEMA violations, like violations of the Consumer Protection Act, are 'in the nature of a tort.' Indeed, both statutes regulate[ ] false and deceptive trade practices … the same principles that when faced with questions of individual liability for torts apply here." *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 846 (Md. Ct. Spec. App. 2006).

None of the facts BSI cites in its brief warrant reversing the district court's ruling because all of them are immaterial and cannot defeat summary judgment. For example, BSI's statement that "*every* message in this case was addressed to a BSI email account" is immaterial and misleading at best: the emails went to Hypertouch and then Hypertouch sent them to BSI pursuant to an agreement between the brothers. (SOF ¶ 4.) After all, almost all of the emails over which BSI sues Connexus were addressed to hypertouch.com – not bsi.com or

-15-

beyondsystems.com. (SOF ¶¶ 5(b)-(c).)   Regardless, even accepting these and BSI's other facts as true, none of them change the material undisputed fact that BSI agreed to receive from his brother almost all of the emails over which BSI sues Connexus knowing that such emails would be spam, and consented to receive the other emails through BSI's intentional and consensual conduct described herein.

Finally, BSI's argument that *Gordon* does not apply because the plaintiff in *Gordon* sued under the federal CAN-SPAM Act, which according to BSI confers standing only to ISPs "adversely affected" by violations of the Act, is wrong. Judge Gould wrote in his concurring opinion that the common law "did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award," and that although plaintiff sued under a federal statute, "on close examination, many distinctions between common law and statutory law disappear." *Id*. at 1067-68.   Thus, it is immaterial that the plaintiff in *Gordon* sued under CAN-SPAM because Gordon's rationale applies here: the common law did not develop remedies for people who gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award like BSI/Paul Wagner.

## CONCLUSION

For all of these reasons, the district court properly granted summary judgment, and this Court should affirm its ruling, because the *volenti non fit injuria* doctrine is a valid defense to the Maryland and California anti-spam statutes, and the undisputed facts show that BSI consented to receive the emails over which it sues.

## REQUEST FOR ORAL ARGUMENT

Connexus respectfully requests oral argument on all issues raised herein.

Dated:  February 24, 2014                    Respectfully submitted by:

VENABLE LLP
By: /s/ Ari N. Rothman
J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th St., N.W.
Washington, D.C. 20004-1601
Tel.:  (202) 344-4000
Fax:  (202) 344-8300
anrothman@venable.com

*Counsel for Connexus Corp.*

-17-

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
**Certificate of Compliance With Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

28.1(e)(2) or 32(a)(7)(B) because this brief contains 3,726 words, excluding

the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in 14 point Times New Roman.

Dated:  February 24, 2014              Respectfully submitted by:

                                       By: /s/ Ari N. Rothman
                                       VENABLE LLP
                                       575 7th Street, N.W.
                                       Washington, D.C. 20004-1601
                                       Tel.:  (202) 344-4000 (phone)
                                       Fax:  (202) 344-8300
                                       anrothman@venable.com

                                       *Counsel for Connexus Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below via U.S. mail.

Richard K. Willard
Jill C. Maguire
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036

Stephen H. Ring
STEPHEN H. RING, PC
506 Main Street, Suite 215
Gaithersburg, MD 20878

Michael S. Rothman
LAW OFFICE OF MICHAEL S. ROTHMAN
401 East Jefferson Street, Suite 201
Rockville, MD 20850-0000

*Counsel for Plaintiff-Appellant Beyond Systems, Inc.*

John M. Devaney
John K. Roche
PERKINS COIE LLP
607 14th Street, N.W.
575 7th Street, N.W.
Washington, DC 20005-2003

*Counsel for Appellees Kraft Foods, Inc., Kraft Foods Global, and Vict. Th. Engwall & Co.*

Darrell J. Graham
John E. Bucheit
ROESER BUCHEIT & GRAHAM  LLC
2 N. Riverside Plaza, Ste. 1420
Chicago, IL  60606

*Counsel for Appellees Kraft Foods Inc., Kraft Foods Global, and Vict. Th. Engwall & Co.*

By: /s/ Ari N. Rothman     
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
Tel.:  (202) 344-4000 (phone)
Fax:  (202) 344-8300
anrothman@venable.com

*Counsel for Connexus Corp.*