RECORD NO. 13-2137

_____

In The
United States Court of Appeals
For The Fourth Circuit

**BEYOND SYSTEMS, INC.,**

*Plaintiff-Appellant,*

v.

**KRAFT FOODS INCORPORATED,
ET AL.**

*Defendants/Appellees.*

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

CIVIL CASE NO. PJM-08-409

_____

**APPELLANT'S AMENDED MOTION FOR
CERTIFICATION OF QUESTIONS OF LAW TO THE
COURT OF APPEALS OF MARYLAND**

| | |
|---|---|
| Stephen H. Ring, Esq. | Michael S. Rothman, Esq. |
| LAW OFFICES OF | LAW OFFICES OF |
|   STEPHEN H. RING, P.C. |   MICHAEL S. ROTHMAN |
| Belward Campus Dr., Ste. 175 | 401 E. Jefferson St., Ste. 201 |
| Rockville, MD 20850 | Rockville, MD 20850 |
| (301) 563-9249 | (301) 251-9660 |

Co-*Counsel for Appellant Beyond Systems, Inc.*

## 1. Amended Motion for Certification

Appellant, Beyond Systems, Inc. ('BSI"), by its counsel, pursuant to Fed. R. App. P. 27 (a), and Md. Code Ann., CJP §12-603, respectfully moves this Court to certify questions of Maryland state law, set forth in Section 6 of this motion, to the Court of Appeals of Maryland. This amended motion supersedes and replaces the original Motion for Certification at ECF 57 filed on February 19, 2015.

This suit raises questions as to the proper application of the Maryland Commercial Electronic Mail Act, codified as Md. Code Ann., Comm. Law, Sections 14-3001, *et seq.*, ("MCEMA" or "the statute"). If certified and answered, these questions would be determinative of the case before this Court, and would clarify issues regarding MCEMA, minimizing future disputes about its application.

This motion is timely under Md. Code Ann., CJP §12-603, as this case is pending before the Fourth Circuit. The mandate has been stayed following the filing of the Petition for Rehearing En Banc, which in turn depends on answers to the questions of state law for which certification is sought here.

## 2. Facts Relevant to the Questions of State Law to be Answered

BSI is a corporation chartered in the State of Maryland and is a resident of this State. It provides services as an Interactive Computer

2

Service Provider ("ICSP") and has received over $300,000 in business income from providing these services to business and residential customers. As the District Court noted, BSI provided services to "at least 20 paying customers," and to the Young Woman's Christian Home and St. Luke's House at little or no charge. ." *Beyond Systems, Inc. v. Kraft Foods, Inc., et al.*, 972 F. Supp. 2d 748, 759 (D. Md. 2013), copy attached as Exhibit F. BSI has previously recovered over $1 million in gross from other anti-spam suits.

Spammers send commercial e-mails designed to evade filters. JA-85 – 087. "Spam crawlers" are computer programs spammers use to look for e-mail addresses and subscribe them to e-mail lists. Panel Decision at 4. Certain e-mail addresses of BSI were embedded "in websites so that they were undiscoverable except to computer programs that serve no other function than to find e-mail accounts to spam." Id. at 14. Such "spam traps" are acceptable if used by "legitimate internet service providers." Id. at 15. Spammers use deception to evade filters, rendering filters ineffective. JA-85, -86, -87, -94, -95(citing *FCC Report to Congress*).

The increase in spam has forced service providers to increase the capacities of their servers. BSI did this. Id. at 14. Spammers sent thousands of e-mails containing material falsity and deception to BSI's e-mail

3

addresses, without BSI having communicated with the senders to request them. Since it began providing e-mail services in the late 1990s, BSI has retained virtually all e-mails sent to its servers not addressed to a user, including both misaddressed e-mails and spam. JA-180 – 184. Upon examination of many thousands of e-mails, including e-mails from many different spammers, BSI was able to identify thousands that were traceable to the defendants/appellees.

In 2008 BSI filed the civil complaint in this action against Kraft Foods, Inc., *et al.*, under diversity jurisdiction in the U.S. District Court for the District of Maryland, Case No. PJM-08-409. The complaint alleges that the defendants violated MCEMA by sending thousands of unsolicited commercial e-mails that were materially false or deceptive, and that this conduct was intentional rather than negligent. Second Amended Complaint §37, JA091.

### 3. MCEMA and Public Policy

MCEMA was enacted "to curb the dissemination of false or misleading information through unsolicited, commercial e-mail, as a deceptive business practice." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 16, 878 A.2d 567 (2005). A copy of the statute is attached as Exhibit A.

4

MCEMA is aggressive. It creates a private cause of action against those who "initiate the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail" that contains certain misleading or false information. Md. Code Ann., Comm. Law, §14-3002(b). It is thus designed to cast a wide net against those involved in the unlawful activity, including those who might hide behind layers of intermediaries. It awards attorney's fees as the first category of monetary relief, sets damages at $500 per violation for a recipient and $1,000 per violation for an interactive computer service provider (ICSP), and does not require any element of intent on the part of a defendant, or any showing of actual damages by a plaintiff. Damages are calculated "for each offending e-mail." *Beyond Systems, Inc. v. Kraft* Foods, Inc., et al., 972 F. Supp. 2d 748, at 756 or "for each occurrence," id. at 764 (quoting from MCEMA's legislative history).

Conduct that violates MCEMA also violates Maryland Criminal Law Code §3-805.1, which prescribes penalties that include imprisonment ranging from 3 to 10 years, fines ranging from $5,000 to $25,000, and forfeitures of moneys and property. Id. §3-508.1(c) and (d).

Like other anti-spam statutes having similarly broad and aggressive terms, MCEMA is a public interest statute enacted to address a serious and

5

widespread problem that victimizes the public. The evils of spam are detailed in the Second Amended Complaint at JA-087 – 092; see also, Panel Decision at 3. The legislative history of MCEMA shows that it fills a gap in existing law. Its sponsor stated:

> If enough victims in Maryland and other states use laws such as this proposed bill, the use of unsolicited commercial e-mail as a sales tool might be reduced. Senator Teitlebaum, at JA 496.

To "use laws such as this proposed bill" can mean only to file suit, as that is the only action authorized by MCEMA. Residents of Maryland who sue under MCEMA are incentivized "private attorney generals" who may be entitled to monetary awards without proof of actual damages. This is an efficient method of enforcement in furtherance of public policy that saves state resources. *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F.Supp.2d 523, 535-536 (D. Md. 2006).

As briefed by the Appellees, "a violation of MCEMA, by definition, also violates the Maryland Consumer Protection Act . . . " Consolidated Brief of Appellees Kraft Foods, Inc., et al. at 9. The Maryland CPA is itself a broad remedial statute.

> The CPA is now found in Title 13 of the Commercial Law Article and constitutes remedial legislation that is intended to be construed liberally in order to promote its purpose of providing a modicum of protection for the State's consumers.

6

*Washington Home Remodelers v. State of Maryland*, Court of Appeals No. 82, September Term, 2011, decision filed May 22, 2012. The Panel Decision recognizes that Maryland treats MCEMA "like violations of the Consumer Protection Act." Panel Decision at 11. Thus, MCEMA is clearly a remedial statute.

Remedial statutes "`must be liberally construed ... in order to effectuate the [statute's] broad remedial purpose.'" *Caffrey v. Dep't of Liquor Control for Montgomery County*, 370 Md. 272, 306, 805 A.2d 268, 288 (2002). See also, *Coburn v. Coburn*, 342 Md 244, 246, &74 A. 2d 951, 957 (1996). The Court of Appeals of Maryland has further stated:

> In short, we have before us remedial legislation. When the legislature enacts a statute designed, as the Act is, to provide remedies not available at common law, it is not desirable that construction should be mindlessly guided by a slogan, such as `statutes in derogation of the common law must be narrowly construed.' Statutes of this nature `are remedial and designed to close a gap in the preexisting law....' A court should not permit `a narrow or grudging process of construction to exemplify and perpetuate the very evils to be remedied . . . .

*Neal v. Fisher*, 312 Md. 685, 693-94, 541 A.2d 1314, 1318 (1988). By applying the *volenti* defense and the extra *bona fide* requirement, as addressed below, the Panel Decision and the District Court insert barriers to enforcement that contradict the ruling in *Neal*. Further, the doctrine of liberal construction of remedial statutes does not permit a court to redraft a clearly

7

written statute. *Hyatt v. Hyatt*, 53 Md. App. 55, 59, 452 A.2d 436, 438 (1982).

### 4. The Issues Needing Certification to the Court of Appeals of Maryland.

Two primary issues give rise to the questions for certification. First, the Panel Decision relies on the ancient common law defense of v*olenti non fit injuria*, which is synonymous with a*ssumption of the risk*, as a defense to the intentional statutory tort alleged here. The Court ruled that BSI had "consented" to its injuries and was therefore barred from pursuing its claims under MCEMA, without receiving evidence on the defendants' conduct that caused the propogation of the emails. *Kraft*, id., 972 F. Supp.2d, at 767-771. Having found that BSI had met the requirements for Article III standing and ICSP status, the Court nevertheless elevated the *volenti* defense to defeat that standing, and affirmed the entry of summary judgment against BSI.

Secondly, although it found that BSI had Article III standing and ICSP status, the District Court engrafted onto MCEMA a requirement that an ICSP be "*bona fide*" in order to sue. In granting summary judgment against BSI, the court ruled that BSI's anti-spam litigation stripped it of

8

*bona fide* status, and that BSI therefore could not sue under MCEMA.[1]  This ruling was not disturbed by the Panel Decision.

## 5. Reasons for Certification of the Questions of State Law

Certification of the questions of state law to the Court of Appeals of Maryland is necessary because the District Court's decision and the Panel Decision have created conflicts with Maryland law that need to be resolved by the Court of Appeals of Maryland.  These decisions improperly allow a common law negligence defense to be applied against a Maryland public interest statute, and breach the boundaries set by the *Erie* Doctrine in

---

[1]     In crafting its expansion of the Maryland statute, the District Court instructed the jury, "An entity is not a bona fide ICSP . . . if it primarily or substantially engages in bringing anti-spam litigation." JA 672, Exhibit C. See also JA 434, Exhibit E.

Under this instruction, the jury found BSI was not bona fide.  In later granting summary judgment against BSI, the Curt ruled, "The Court holds that for an ISP to be eligible to sue under either the Maryland or California statute, it must function primarily and substantially as an ISP, which is to say, it must be bona fide."  972 F. Supp. 2d 748, 763-766.

The ruling gives no indication as to whether the test criteria are the hours invested, the amount of money sought, the amount of money recovered, the number of suits filed per year, the average recovery per suit, or for what period of time the taint of "no bona fide status" is deemed to last. It is unclear whether the taint can come and go month by month, or whether it is permanent. Does the test apply when the spam was received, when suit was filed, or at some other point in time?  The test is unworkable, and against Maryland law.

engrafting onto a Maryland public interest statute a new *bona fide* requirement to force it to mirror the federal CAN-SPAM Act.

### **a. Application of the defense of *volenti non fit injuria* may only be applied to negligence claims.**

The doctrine of *volenti non fit injuria,* when invoked at all, applies only to negligence claims and affords no defense to a claim based upon an intentional breach of statutory duty.[2] *Janelsins v. Button*, 648 A.2d 1039,

---

[2] In addition to the conflict with established Maryland law, allowing the *volenti* defense will create confusion in future litigation over the Maryland statute. The Panel Decision affirmed the entry of summary judgment against BSI, finding it had "invited" deceptive e-mails in order to collect monetary damage awards under MCEMA (Panel Decision at 15, n. 2), but left the criteria for finding "invitation" so vague that enforcement of MCEMA will be hindered as defendants creatively invoke the *volenti* defense.

Neither the district court decision nor the Panel Decision address whether the e-mails that were "invited" are the same e-mails for which damages are sought in this suit; or which of the several batches of e-mails received over the years, having differing characteristics, had been "invited" in the required manner or degree; how much time lapse is tolerable between the time of "invitation," the time of sending, and the time of filing suit; or whether some of the e-mails claimed in this suit were not "invited" under the Court's criteria.

The District Court also concluded that BSI had "gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award," (Id., fn. 2) without addressing the defendants' role in creating and causing the e-mails to be sent to BSI, the balance of responsibility between the sender and the recipient, or the legal standards for permissible "spam traps" and other elements that may be part of the test for legitimacy.

10

1044 (Md. App. 1994); *State Farm v. Hill*, 775 A.2d 476, 482 (Md. App. 2001).

The common law defense of "consent" under any doctrine does not apply to a public offense. American Jurisprudence 2d, Section 53. The Restatement (Second) Torts, Section 892C, comment d, is in accord. The legislative history of MCEMA and the statements of public policy supporting anti-spam legislation leave no room to dispute that violation of MCEMA is a public offense against residents of Maryland. See Second Amended Complaint, JA-087 – 092; *Keynetics*, supra, 422 F.Supp.2d 523 at 525, 528, 529.

To support the *volenti* defense, the Panel Decision relies on *Hardy v State*, 301 Md. 124, 482 A, 2d 474, 478 (Md. 1984) (Panel Decision at 12). In *Hardy*, the Court of Appeals of Maryland affirmed that the State has guaranteed the common law of England to the citizens of Maryland:

> . . . Article 5 of the Maryland Declaration of Rights . . . guarantees to Maryland citizens the common-law of England.

Id, 482 A. 2d at 478. Although not stated in Hardy, Article 5 guarantees common law rights "as existed on the Fourth day of July, seventeen hundred and seventy-six." As held by the House of Lords, acting as the highest judicial authority regarding the common law of England in 1965, (the Supreme Court of the United Kingdom was created in 2009), it is

"…settled law that the doctrine of *volenti non fit injuria* affords no defence to a claim based on breach of a statutory duty."

*Imperial Chemical Industries, Ltd.*, [1965] 1 AC 656, opinion of Lord Hodson, citing to *Wheeler v New Merton Board Mills, Ltd.* [1933] 2 K.B. 669. Copy of *Imperial Chemical* attached as Exhibit B.

The doctrine of *volenti non fit injuria* is an ancient maxim found in the common law, dating back to the 1300's. It has not been modified by any statute or case decision in Maryland, other than being merged with the doctrine of assumption of the risk. Both doctrines are defenses that apply only to negligence claims. *Janelsins* v. *Button,* 648 A.2d 1039, 1044 (Md. App. 1994).

The *volenti* defense acts to bar a plaintiff's claims, either in negligence or breach of contract. It is rarely invoked, and rarely successful.

The District Court relied on *Janelsins* to impose the doctrine of *volenti non fit injuria* on BSI's statutory intentional tort claims against the defendants for breach of duty in sending deceptive mass spam e-mails to residents of Maryland in violation of a public interest statute. As a matter of public policy, consent to a statutory intentional tort is not a defense, and the doctrine of *volenti non fit injuria* does not apply to alleged intentional conduct in breach of a statutory duty under MCEMA, which protects Marylanders from deceptive mass spam e-mails. Moreover, the *volenti*

12

defense in Maryland applies only to negligence claims. *State Farm* v. *Hill*, 775 A.2d 476,482 (Md. App. 2001).

The Panel Decision sets an ambivalent standard for application of the *volenti* defense, stating, that the use of "spam traps," a mechanism by which BSI "invited injury," would be acceptable for "a plaintiff which is a legitimate internet service provider" in order to gather and retain e-mails for use in a lawsuit. Id. at 15. Thus, certain plaintiffs are allowed to "invite harm," while others are not, depending on their "legitimacy." Yet, it seems by this logic that "inviting injury" would rate a service provider closer to "illegitimacy." This invites calculus on the degrees of "legitimacy," and endless debate on the weighting of factors to be considered.

The Panel Decision's application of the defense of *volenti non fit injuria* against a breach of a statutory duty under MCEMA was contrary to established Maryland law, and the questions on the application of this defense, listed below, should be submitted to the Court of Appeals of Maryland to affirm the existing law.

### b. The addition of a federal *bona fide* requirement for an ICSP plaintiff suing for statutory damages under MCEMA impermissibly expands Maryland law.

The District Court borrowed the *bona fide* requirement from the federal CAN-SPAM Act, 15 U.S.C. §7706, et. seq., and engrafted it onto

13

MCEMA, in violation of the *Erie* Doctrine as long established in the Fourth Circuit. *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995). This application impermissibly "expanded" MCEMA in an effort to make it mirror a federal anti-spam law. See, *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1068 (9th Cir. 2009), noting a *bona fide* requirement under CAN-SPAM. The *Erie* Doctrine is well established in the Fourth Circuit:

> It is inappropriate for a federal court to "imply what should be in a state statute."

*Rhodes v. E. I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011).

*Dunn v. Borta*, 369 F.3d 421, 432-433 (4th Cir. 2004).

> Federal courts are permitted under *Erie v. Tompkins* to rule upon state law as it 'presently exists,' and not to surmise or suggest its expansion.

*Janelsins v. Button,* 648 A.2wd 1039, 1044 (Md. App. 1994); *State Farm v. Hill, 775 A.2d 476, 482 (Md. App. 2001)*. The Fourth Circuit has further held:

> In this dispute, however, the cause of action has been created by the Virginia General Assembly and codified at 13.1-522 of the Act. It would be inappropriate for us to augment a Virginia cause of action with a requirement that does not appear on the face of the statute.

*Dunn v. Borta*, 369 F.3d 421, 430 (4th Cir. 2004). And perhaps most compelling here are these words by the Supreme Court:

> [W]e will not read any further condition into the statute" where the plaintiffs satisfied the statute's standing requirements as defined by the "text of the statute.

*Gollust v. Mendell*, 501 U.S. 115, 127 (1991).

There is no *bona fide* requirement for an ICSP under MCEMA or any other provision of Maryland statutory or case law, and there is no "clear and dominant articulation" by the General Assembly or the courts of Maryland of a public policy to impose such a requirement on an ICSP, such as BSI, suing under MCEMA for statutory damages. *St. Paul Fire & Marine, Inc. Co. v. Jacobson*, id. 48 F3d, at p. 783.

The District Court's addition of a *bona fide* requirement to MCEMA was contrary to established Maryland law, and the questions on this issue, listed below, should be submitted to the Court of Appeals of Maryland to affirm the existing law.

<h3 style="text-align:center"><u>6. Questions of Law to be<br>Certified to the Court of Appeals of Maryland</u></h3>

**QUESTION 1:** After a jury and a trial court have found that a plaintiff qualifies as an ICSP under MCEMA, and in view of the legislative public policy supporting this remedial statute, is a defendant barred from asserting *volenti non fit injuria* and other common law defenses in a suit for breach of a statutory duty arising from the public offense of intentionally disseminating false or deceptive commercial e-mails?

15

**QUESTION 2**: After a jury and a trial court have found that a plaintiff qualifies as an ICSP under MCEMA, and in view of the legislative public policy supporting this remedial statute, may the plaintiff sue for statutory damages under MCEMA without the imposition of an additional requirement derived from federal law that the plaintiff be "bona fide"?

### 7. The Questions for Certification are Likely to be Answered in favor of Appellant.

Appellant submits that the questions for certification are likely to be answered in Appellant's favor for the following reasons:

The doctrine of *volenti non fit injuria* does not provide a defense to a claim for breach of a statutory duty arising from an intentional public offense in violation of a remedial statute under Maryland law.

No requirements exist under MCEMA, the public policy of Maryland, or any Maryland law, that an ICSP be "*bona fide*" in order to sue for statutory damages under MCEMA. Application of such a criterion is an impermissible expansion of MCEMA in violation of the *Erie* Doctrine.

### 8. Conclusion

Appellant BSI requests that this Honorable Court certify the questions of state law listed above to the Court of Appeals of Maryland. Appellant's pending Petition for Rehearing En Banc raises these questions of state law,

and any further proceedings in this Court pursuant to that petition will likely be influenced or definitively controlled by the requested answers.

If this case is remanded, Appellant will abandon the claims it asserted under California anti-spam statutory law in the Second Amended Complaint.

Appellant consents to an extension for any response by Appellees to this motion, commensurate with the filing of this amended motion six days after the original motion.

Respectfully submitted,

_____/s/_____
Stephen H. Ring, Esq.,
Belward Campus Dr., Ste. 175
Rockville, MD 20850
Tel. (301) 563-9249  Fax (301) 563-9639
E-Mail: shr@ringlaw.us


_____/s/_____
Michael L. Rothman, Esq.,
401 E. Jefferson St., Ste. 201
Rockville, MD 20850
Tel. (301) 251-9660
E-Mail: mike@mikerothman.com

Co-Counsel for Appellant Beyond Systems, Inc.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE27(a)

I hereby certify that I have complied with Local Rule 27 (a). The opposing parties have not consented and have indicated they will likely file oppositions to this Motion.

_____/s/_____
Stephen H. Ring
Co-Counsel for Appellant

## CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of this document was served on February 24, 2015 by CM/ECF to:

John L. Roche, Esq.
Perkins Coie, LLP
700 Thirteenth St., N.W., Suite 600
Washington, DC 20005-3960
Counsel for Appellees Kraft Foods, Inc., et al.

Darrell J. Graham, Esq.
John E. Bucheit, Esq.
Roeser Bucheit & Graham, LLC
20 N. Wacker Dr., Ste. 1330
Chicago, IL 60606
Counsel for Appellees Kraft Foods, Inc., et al.

J. Douglas Baldridge, Esq.
Ari N. Rothman, Esq.
Venable, LLP
575 Seventh St., N.W.,
Washington, DC 20004-1601
Counsel for Appellee Connexus Corporation

_____/s/_____
Stephen H. Ring

## **List of Exhibits**

A    Maryland Commercial Electronic Mail Act, Md. Code Ann., Comm. Law, Sections 14-3001, et seq. (MCEMA)

B    Imperial Chemical Industries, Ltd., (1965) 1 AC 656

C    Jury Instructions on ICSP and *bona fide*, printed, with verdict sheets, JA 665 -74

D    Jury Instructions on ICSP, etc., transcript, JA 283 – 292

E    Jury Instructions on bona fide, transcript, JA 434 – 441

F    Beyond Systems, Inc. v. Kraft Foods, Inc., et al., 972 F. Supp. 2d 748, 760 (D. Md. 2013)