RECORD NO. 13-2137

# In the
# United States Court of Appeals
## For The Fourth Circuit

**BEYOND SYSTEMS, INC.,**

*Plaintiff-Appellant,*

v.

**KRAFT FOODS, INCORPORATED; VICT. TH. ENGWALL & CO.;
KRAFT FOODS GLOBAL, INCORPORATED; and
CONNEXUS CORPORATION,**

*Defendants-Appellees.*

**ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT**

**APPELLEES' RESPONSE TO APPELLANT'S MOTION FOR
CERTIFICATION OF STATE LAW ISSUES TO
THE MARYLAND COURT OF APPEALS**

John K. Roche
PERKINS COIE LLP
700 13th St., N.W., Suite 600
Washington, D.C. 20005-3960
(202) 434-1627

Darrell J. Graham
John E. Bucheit
ROESER BUCHEIT & GRAHAM LLC
Two N. Riverside Plaza, Suite 1420
Chicago, IL  60606
(312) 621-0301

*Counsel for Appellees Kraft Foods Inc., Vict.
Th. Engwall & Co., and Kraft Foods Global*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004-1601

*Counsel for Appellee Connexus
Corporation*

# I. <u>INTRODUCTION</u>[1]

BSI's request that the Court certify legal questions to the Maryland Court of Appeals comes for the first time after seven years of federal court litigation, four years of discovery, summary judgment motions raising the same questions more than five years ago, a two-week jury trial, over 200 pages of post-trial briefing, a 37-page decision by the District Court, briefing, oral argument and a decision from this Court addressing issues that BSI only *now* submits are more appropriately decided by the Maryland Court of Appeals. While BSI seeks to certify whether the common-law defense *volenti non fit injuria* bars its claims, it offers no persuasive reason why this Court should burden the Maryland Court of Appeals with yet even *more* litigation in this case by asking it to address an issue the District Court and Panel have already decided based on existing Maryland law. And while it also asks the Court to certify the question of whether only *bona fide* ICSPs have standing to sue under MCEMA, the Panel did not even reach that issue, having determined that its resolution was unnecessary to the disposition of the case. BSI's effort to take a second bite of the apple should be rejected, and its Motion should be denied.

---

[1]     For ease of reference, we adopt the abbreviations BSI uses in its Motion.

## II. **PROCEDURAL HISTORY**

### A.  **Summary of the Undisputed Facts.**

It is undisputed that BSI is in the business of intentionally attracting and collecting commercial email and suing the companies that send it under state and federal anti-spam laws.  By its own admission, all of BSI's activities relate to litigation, to which its owner Paul Wagner devoted forty or more hours a week. JA417, 675-79.  Between 2002 and 2008, BSI filed over two-dozen spam-related lawsuits, in which it sought millions of dollars in statutory damages for email it purposely made no attempt to avoid and, with the help of Wagner's brother Joe and his company Hypertouch, went to considerable lengths to attract and collect.  JA JA421-22.

The strategy behind BSI's litigation scheme was simple:  (i) Place email servers in two states – Maryland and California – that have hefty statutory penalties for unsolicited commercial email; (ii) use those servers to seek out and collect as much commercial email as possible; (iii) route the email through Hypertouch's server in California first, which then automatically forwarded them to BSI's server in Maryland; (iv) archive the email indefinitely; (v) mine them for deep-pocket defendants to sue, sometimes years after the email were received; (vi) bring separate lawsuits – one in California, one in Maryland – asserting multiple claims on the same email; (vii) leverage the high cost of litigation and sheer

2

volume of email collected and archived over the years to coerce large settlements, regardless of whether the email collected was actually unlawful.[2]

To further its litigation strategy, BSI collected spam, including through its use of "spam traps" consisting of randomly-generated email addresses BSI embedded in the code of webpages it posted on the Internet. Panel Op. at 4. The email addresses were invisible to website visitors, and could be discovered only by "spam crawlers," computer programs used to search the Internet for email addresses. *Id.* Contrary to industry practice, BSI made no effort to block or filter incoming spam, despite the relative ease and inexpensiveness of doing so, and instead took affirmative steps to ensure that any incoming spam was not rejected. *Id.* at 4, 14-15; ECF No. 37, Appellee Br. at 13-18.

## B. The District Court's Ruling.

Following a two-week jury trial, the District Court entered judgment for the Appellees on two alternative grounds. First, the District Court determined that BSI is not a *bona fide* "interactive computer service provider" under MCEMA. Dist.

---

[2] The email on which BSI sued Kraft were promotional advertisements for Kraft's Gevalia coffee. Kraft maintained below that the emails complied with state and federal laws regulating commercial email, and BSI's claim to the contrary was not before the District Court. It was undisputed that Kraft's emails were sent by independent contractors, clearly identified Kraft in the advertisement, and informed recipients how to contact Kraft either by phone, email or regular mail to complain about and stop their receipt of the email if they no longer wanted to receive it. At no point prior to filing suit, however, did BSI notify Kraft of any objection to its receipt of the email.

3

Ct. Op. at 20-26.  Adopting the advisory jury's verdict and based on its own

findings of fact, the District Court ruled that BSI therefore did not have standing to

sue Kraft or Connexus for alleged violations of the statute.  *Id.* at 26.

Second, the District Court concluded that the evidence presented at trial was

"overwhelming" that BSI had consented to the harm alleged and, therefore, its

claims were barred by the common-law defense *volenti fit injuria*, or as loosely

translated, "no wrong is done to one who consents."  Panel Op. at 13; Dist. Ct. Op.

at 30 ("'The man who is the author of his own hurt has no right to complain.'").

Rejecting the argument BSI's Motion repeats here, the District Court found "no

reason," under Maryland (or California) law, "why the *volenti* defense should not

apply in the context of an anti-spam statute."  Dist. Ct. Op. at 32.

## C.    The Panel's Decision.

The Panel declined to address the *bona fide* issue on appeal, and instead

affirmed judgment based solely on the *volenti* defense.  Panel Op. at 15.  The Panel

found "informative" the Maryland Court of Special Appeals' pronouncement that

claims under MCEMA are "in the nature of tort," meaning that "the same

principles that guide [Maryland courts] when faced with questions of individual

liability for torts" must apply to the statute absent an express statutory intent to the

contrary.  Panel Op. at 11, citing *MaryCLE LLC v. First Choice Internet, Inc.*, 890

A.2d 818, 846 (Md. App. 2006).  "[B]ecause nothing in [MCEMA's] text suggests

4

otherwise," the Panel concluded, *volenti non fit injuria* was a viable defense to

BSI's claims under MCEMA.  Panel Op. at 12-13, citing *Hardy v. State*, 482 A.2d

474, 478 (Md. 1984) ("Maryland courts adhere to the policy that statutes are not to

be construed to alter the common-law by implication.").

Agreeing with the District Court that the undisputed evidence BSI had

solicited the emails at issue was "overwhelming," the Panel thus affirmed that its

claims were barred as a matter of Maryland law.  Panel Op. at 14-15 ("[W]e agree

with the district court that Beyond Systems' consent to – and indeed its solicitation

of – the harm at issue in this cases prohibits [it] from recovering under the

Maryland . . . anti-span statute[].")

### III.  APPLICABLE LEGAL STANDARD

The certification of questions to the Maryland Court of Appeals is governed

by MD. CODE, CTS & JUD. PROC. § 12-603, which provides that: "[t]he Court of

Appeals . . . may answer a question of law certified to it by a court of the United

States . . . if the answer may be determinative of an issue in pending litigation in

the certifying court and there is no controlling appellate decision, constitutional

provision, or statute of this State."  The purpose of certification is to "save time,

energy, and resources and help[] build a cooperative judicial federalism." *Lehman*

*Bros. v. Schein*, 416 U.S. 386, 391 (1974).

Certification rests within the "sound discretion of the federal courts."  *Id.* at

5

390; *Boyster v. Comm'r of Internal Rev. Serv.*, 668 F.2d 1382, 1385 (4th Cir. 1981). Resort to certification is never mandatory, *Lehman Bros.*, 416 U.S. at 390-91, and should be granted "[o]nly if the available state law is clearly insufficient." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) ("Where there is no case law from the forum state which is directly on point, the district court [must] attempt[] to do as the state court would do if confronted with the same fact pattern."). Even in the absence of controlling state authority, therefore, certification is unwarranted where "the federal court can reach a 'reasoned and principled conclusion'" based on existing state law. *Hafford v. Equity One, Inc.*, 2008 WL 906015, *4 (D. Md. March 31, 2008), quoting *Simpson v. Duke Energy Corp.* 191 F.3d 448, 1999 WL 694444, *3 (4th Cir. Sept. 8, 1999). (*See* Ex. A, hereto.)

## IV. <u>BSI'S UNTIMELY MOTION SHOULD BE DENIED</u>

### A. **BSI's Motion is Untimely.**

Post-judgment motions to certify questions are rarely granted, to the point that federal courts have articulated a strong presumption against entertaining such motions. *See*, *e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108-09 (9th Cir. 2013) ("[T]here is a 'presumption against certifying a question to a state supreme court after the federal district court has issued a decision.'"); *Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency*, 178 F.3d 1363, 1364-65 (10th Cir. 1999) ("Late requests for certification are rarely granted by this circuit and are generally

6

disapproved, particularly when the district court has already ruled."); *accord Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 210 (8th Cir. 1987); *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977).

The reasons are simple. First, a "party should not be allowed 'a second chance at victory' through certification." *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008); *Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000). A contrary rule would reward gamesmanship, making "the initial federal court decision . . . nothing but a gamble with certification sought only after an adverse decision." *Perkins*, 547 F.3d at 209-10; *cf Cantwell*, 551 F.2d at 880 ("We do not look favorably [] on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court.").

Second, moving to certify an issue only *after* it has been decided does nothing to "save [the] time, energy, and resources" of either the courts or the parties. As the Tenth Circuit explained when denying a post-judgment motion similar to BSI's, "[c]ertification may well have been an appropriate option at some time earlier in the litigation. Now, however, neither this court nor the parties would reap any conservation of time, energy or resources were this court to grant certification." *Boyd Rosene & Assoc., Inc.*, 178 F.3d at 1365. In most cases, the court observed, "it would be inefficient and wasteful of the parties' and the federal courts' previously expended time, energy and resources." *Id.*; *Harris v. Karri-On*

7

*Campers, Inc.*, 640 F.2d 65, 68 (7th Cir. 1981) ("Appellants filed and tried the case in federal court without seeking certification. To certify questions at this late date would only prolong the life of this litigation for all.").

Both questions that BSI moves to certify were first presented to the District Court over five years ago on Appellees' motions for summary judgment. *BSI v. Kraft Foods, Inc.*, Case No. 8-cv-409-PJM ("Dist. Ct. Proc."), ECF 257 (moving for summary judgment on ground that BSI was not a bona fide ISP and had consented to its alleged harm). BSI did not seek certification at that appropriate juncture, nor at any time thereafter despite several opportunities to do so. It instead elected to take its shot in federal court and, having lost, is at this point merely looking for one more bite at the apple. For this reason alone, the Court should deny BSI's Motion. *See Enfield*, 228 F.3d at 1255 ("[T]he City did not seek certification until after it received an adverse decision from the district court. That fact alone persuades us that certification is inappropriate."); *cf. Cantwell*, 551 F.2d at 880 ("[T]he purpose of certification . . . is not to permit a party to seek to persuade the state court to change what appears to be present law.").

### B. BSI Could Have Pursued Its Claims in State Court from the Beginning, but Instead Sought the Federal Court Rulings it now Claims were Inappropriate.

For the same reason post-judgment certification is rarely granted, courts are "especially hesitant" to grant certification where, as here, "the party seeking

certification is the same party that sought federal jurisdiction in the first place and, by extension, federal interpretation of state law." *Simpson*, 191 F.3d 448, 1999 WL 694444 at *3 (Ex. A, hereto); *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984) (request for certification by plaintiff who chooses to invoke federal jurisdiction "comes with little grace"), citing *Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir. 1977) ("[O]ne who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification."); *Metz v. BAE Systems Tech Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) (same).

BSI itself chose to pursue its state law claims in federal court, filing a two-count complaint against Kraft and Connexus alleging state law claims under the District Court's diversity jurisdiction. Dist. Ct. Proc., ECF No. 1. While BSI could have sought a Maryland state court's interpretation of MCEMA all along, it elected to litigate its claims in federal court instead. Having made that choice, BSI should not be heard to complain that its state law questions should now be decided by the Court of Appeals.

### C.  The Panel's Affirmance of Summary Judgment Based on Appellees' *Volenti* Defense was in Accordance with Established Maryland Law.

BSI frames its proposed question regarding the *volenti* defense with a faulty premise. It argues that, in light of MCEMA's "remedial" purpose, the General

9

Assembly necessarily intended to authorize claims by "private attorneys general," such as itself, unharmed or otherwise unaffected by the statutory violations they allege. Mot. at 6-7. That argument finds no support in the actual text of the statute, and the Maryland Court of Appeals has made clear that the General Assembly intended just the opposite.

As BSI now acknowledges, Maryland law "treats MCEMA 'like violations of the [Maryland] Consumer Protection Act.'" Mot. at 7, citing Panel Op. at 11. It thus concedes that the Court of Special Appeals decision cited by the Panel, *MaryCLE v. First Choice Internet, Inc.*, reflects existing Maryland law on two critical points.

First, MCEMA is *in pari materia* with the Maryland Consumer Protection Act ("MCPA"), meaning that the two "should be read as if they were one law." *New Cingular Wireless PCS, LLC v. Finley*, 674 F.3d 225, 249 (4th Cir. 2010) ("[S]tatutes addressing the same subject matter should be read as if they were one law."); *MaryCLE v. First Choice Internet Inc.*, 166 Md.App. 481, 529 (2006) ("[B]oth statutes regulate false and deceptive trade practices. Both are included in the same Article of the Maryland Code, and MCEMA falls under Chapter 14, entitled 'Miscellaneous Consumer Protection Provisions.'").

Second, as with the MCPA, violations of the MCEMA are "in the nature of tort." *MaryCLE*, 166 Md.App. at 529; Panel at 11. Accordingly, "the same

10

principles that guide [Maryland courts] when faced with questions of individual liability for torts apply" to claims under MCEMA. *Id.*

Both points are fatal to BSI's prediction that the Court of Appeals would disagree that *volenti non fit injuria* applies to its statutory claims. Far from encouraging such suits as BSI claims, the MCPA, and thus MCEMA, expressly *prohibits* suits by private attorneys general, requiring instead that to have standing a plaintiff must suffer an actual "injury or loss . . . as the result of a practice prohibited by this title." MD. CODE COM. LAW § 13-408(a). As the Maryland Court of Appeals explained in *Citaranis v. Hallowell*, the purpose of this standing requirement is to prevent the very type of lawsuit the District Court found and the Panel agreed BSI pursued here. 328 Md. 142, 152 (1992) (Sec. 13-408(a) was intended to "'prevent aggressive consumers who were not personally harmed by the prohibited conduct, from instituting suit 'as self-constituted private attorneys general' over relatively minor statutory violations'" pursued "improperly for harassment and improper coercive tactics."). Nothing in the MCPA's or MCEMA's statutory language reflects a contrary legislative intent, nor does BSI identify anything in the statutes' language or legislative history to indicate that, while expressly incorporating into the statutes a common-law tort requirement (*i.e.*, actual injury), the General Assembly did not similarly intend for common-law tort defenses such as *volenti non fit injuria* to also apply. *See*, *e.g.*, *Hardy v. State*, 301

11

Md. 124, 131 (1984) ("Maryland courts adhere to the policy that statutes are not to be construed to alter the common-law by implication.").[3]  The Panel's application of the *volenti* defense – long recognized by Maryland law as a viable defense to intentional torts – was thus supported by MCEMA's statutory scheme, Maryland public policy denouncing private attorney general litigation, and long-standing rules of statutory construction.

BSI's alternative argument, that *volenti non fit injuria* applies only to *negligence* claims under Maryland law, is perplexing.  Mot. at 12-13.  The first case BSI cites, *Janelsins v. Button,* 102 Md. App. 30 (1994), holds no such thing. The other decision BSI cites, *State Farm*, doesn't either and instead addressed the same question as *Janelsins – i.e.*, whether *assumption of the risk*, not consent, is a

---

[3]      BSI tries to avoid this basic cannon of statutory construction by arguing that, under English common law, *volenti non fit injuria* is not a defense to statutory torts, citing to that effect an English House of Lords opinion from 1965.  Mot. at 10, 12.  Setting aside its dubious precedential value to the proceedings here, Lord Hodson's opinion does not stand for the proposition BSI claims.  Far from recognizing a blanket rule that the *volenti* defense does not apply to statutory torts, Lord Hodson confined any such rule to the employer-employee context in which it was first articulated, where an employer demands that an employee consent to a statutory labor violation as a condition of employment.  *See* Mot. Ex. B at. 11. Lords Reid and Donnovan agreed.  *Id.* at 5 ("[T]he respondent argues that there is a general rule that the defence of *volenti non fit injuria* is not available where there has been a breach of a statutory obligation.  It would be odd if that were so") and 15 (*volenti non fit injuria* inapplicable to labor violations because "it would be contrary to public policy to allow an employer to contract out of duties which Parliament had specifically imposed upon him in the interest of the safety of his workman.").

defense to an intentional tort. *State Farm Mut. Auto Ins. Co. v. Hill*, 139 Md.App. 308, 318 (2001). Neither case limits the *volenti* defense to negligence claims, which would be contrary to the fundamental principle on which the defense is based; namely that, because "[a]ll *intended* wrongs have in common the element that they are inflicted without the consent of the victim[,] [t]hose who, with full knowledge, assent to the invasion of their interests may not complain." *Janelsins*, 102 Md. App. at 37 (emphasis added); *see also McQuiggan v. Boy Scouts of America,* 73 Md. App. 705, 714 (1988) (if established, consent negates the wrongful element of defendant's act). If presented with the undisputed facts of this case, there is no reason to believe the Maryland Court of Appeals would not agree with the Panel and District Court that, as a matter of law, BSI's claims are barred by this established principle given its own solicitation of the harm it alleged. *See Brazerol v. Hudson*, 262 Md. 269 (1971) (plaintiff's claim barred by consent to alleged trespass).

### D. The *Bona Fide* Issue was not Determinative of the Panel's Decision and Therefore is not an Appropriate Issue for Certification.

BSI's Motion ignores that the Panel declined to address the District Court's decision that only *bona fide* ICSPs have standing to sue under MCEMA, and instead affirmed judgment based solely on the *volenti non fit injuria* defense. Panel Op. at 15. The District Court's interpretation of MCEMA to include a *bona*

13

*fide* requirement was therefore not outcome determinative, and thus not an issue for which certification is appropriate under MD. CODE, CTS & JUD. PROC. § 12-603 (questions may be certified if "determinative of an issue in pending litigation"); *see also Grattan v. Bd. Of Sch. Comm'rs of Balt. City*, 805 F.2d 1160, 1164 (4th Cir. 1986) (certification "is appropriate when the federal tribunal is required to address a novel issue of local law which is *determinative* in the case before it.") (emphasis added). In effect, what BSI seeks instead is an advisory opinion from the Court of Appeals overturning the District Court's interpretation of MCEMA that had no bearing on the outcome of the case. That is not an appropriate use of Sec. 12-603. *Lehman Bros.*, 416 U.S. at 395 (Rehnquist, J., concurring) (where federal court "believes that it can resolve an issue of state law . . . and makes an effort to do so, its determination should not be disturbed simply because the certification procedure existed but was not used.").

In all events, the District Court was well within its purview under the *Erie* doctrine to predict how the Maryland Court of Appeals would interpret MCEMA based, as it did, on "cannons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells v. Liddy*, 186 F.3d 505, 527-28 (4th Cir. 1999) (federal courts sitting in diversity "have an obligation to interpret the law . . . where [it] is unclear, as it appears the Court of Appeals

14

would rule."); *Ellis v. Grant Thornton LLP*, 530 F.3d 280, 287 (4th Cir. 2008) ("In a situation where the state's highest court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue.").

While BSI complains that "[t]he District Court borrowed the *bona fide* requirement from the federal CAN-SPAM Act . . . and engrafted it onto MCEMA," it ignores that the General Assembly instructs Maryland courts to do precisely what the District Court did – look to federal law for guidance in interpreting the MCPA and thus, by definition, MCEMA.  *See* MD CODE COM. LAW § 13-105 ("It is the intent of the General Assembly that in construing the term 'unfair or deceptive trade practices,' due consideration and weight be given to the interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.");[4] *see also Davis v. State*, 426 Md. 211, 214 (2012) ("We have read analogous provisions in our statute to be *in pari materia* with [federal statutes], as interpreted by federal courts.").

The District Court determined that MCEMA's definition of "interactive computer service provider" is ambiguous (a ruling BSI did not challenge on

---

[4]    CAN-SPAM was enacted as part of the same Title as the Federal Trade Commission Act (Title 15, "Commerce and Trade"), is enforced by the FTC, and incorporates all "applicable terms and conditions" of the Act.  15 U.S.C. §7706(d) ("all applicable terms and provisions of the Federal Trade Commission Act [are] incorporated into and made part of this chapter.")

appeal) which, in accordance with Maryland rules of statutory construction, allowed it to look beyond the statute's language to other indicia of statutory meaning, including analogous federal law. *Anderson v. Council of Unit Owners of Gables on Tucker*, 404 Md. 560, 571-72 (2008) ("plain meaning" rule of construction applies only if statute is clear and unambiguous); *DuBois v. City of College Park*, 280 Md. 525, 528-29 (1977) (looking to federal law for guidance in determining voter standing in Maryland redistricting litigation); *Davidson v. Microsoft Corp.*, 143 Md. App. 43, 50-51 (2002) (interpreting MCPA anti-trust provisions in accordance with federal law). The District Court's construction of MCEMA to include a *bona fide* requirement similar to CAN-SPAM's analogous (and equally ambiguous) definition of "Internet Access Service" provider was thus in accord with Maryland rules of statutory construction and consistent with the Court of Appeals' own practice of looking to federal law for guidance in interpreting state statutes. By all accounts, its decision was a "reasoned and principled" forecast of how the Maryland Court of Appeals would interpret MCEMA on similar facts. As the District Court explained, "[a] legislature need not insert the equivalent of 'real,' 'genuine,' or 'actual,' as a pre-qualifier for every type of entity it invests with a private cause of action," because "[a]s a matter of common sense, legitimacy of the entity is presumed." Dist. Op. at 23, citing *Gordon v. Virtumundo*, 575 F.3d 1040, 1068 (9th Cir. 2009) (Gould, J.,

concurring) (plaintiffs "trying to game the system . . . ordinarily should be denied

statutory standing.").  BSI has given this Court no reason to believe that the

Maryland Court of Appeals would disagree.

## V.  **CONCLUSION**

For the foregoing reasons, BSI's Amended Motion to Certify Questions to

the Court of Appeals of Maryland should be denied.

Dated:  March 10, 2015                    Respectfully submitted by:

By: /s/ John K. Roche                     By: /s/ Ari N. Rothman
PERKINS COIE LLP                          J. Douglas Baldridge
700 13th St., N.W., Suite 600             Lisa Jose Fales
Washington, D.C. 20005-3960               VENABLE LLP
(202) 434-1627                            575 7th Street, N.W.
                                          Washington, DC 20004-1601
Darrell J. Graham
John E. Bucheit                           *Counsel for Appellee Connexus*
ROESER BUCHEIT & GRAHAM LLC               *Corporation*
Two N. Riverside Plaza, Suite 1420
Chicago, IL  60606

*Counsel for Appellees Kraft Foods Inc.,*
*Vict. Th. Engwall & Co., and Kraft*
*Foods Global*

17

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 10, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below via U.S. mail.

Richard K. Willard
Jill C. Maguire
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036

Stephen H. Ring
STEPHEN H. RING, PC
Belward Campus Dr., Ste. 175
Rockville, MD 20850

Michael S. Rothman
LAW OFFICE OF MICHAEL S. ROTHMAN
401 East Jefferson Street, Suite 201
Rockville, MD 20850-0000

*Counsel for Plaintiff-Appellant Beyond Systems, Inc.*

J. Douglas Baldridge
Lisa Jose Fales
Ari N. Rothman
Lauren E. Ingebritson
VENABLE LLP
575 7th Street, N.W.
Washington, DC 20004-1601

*Counsel for Appellee Connexus Corp.*

Darrell J. Graham
John E. Bucheit
Roeser Bucheit & Graham LLC
2 N. Riverside Plaza, Ste. 1420
Chicago, IL 60606

*Counsel for Appellees Kraft Foods Inc., Kraft Foods Global, and Vict. Th. Engwall & Co.*

By: /s/ John K. Roche
John K. Roche
Perkins Coie LLP
700 13th St., N.W., Suite 600
Washington, D.C. 20005-3960
Tel.: (202) 434-1627
Fax: (202) 654-9106
JRoche@perkinscoie.com
*Counsel for Appellees Kraft Foods Inc., Kraft Foods Global, and Vict. Th. Engwall & Co.*

18