# EXHIBIT A

191 F.3d 448
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. See CTA4 Rule 32.1.
United States Court of Appeals,
Fourth Circuit.

Robert H. SIMPSON, Plaintiff-Appellant,
v.
DUKE ENERGY CORPORATION, formerly known as Duke Power Company, Defendant-Appellee.
William R. CHASTAIN, Plaintiff-Appellant,
v.
DUKE ENERGY CORPORATION, formerly known as Duke Power Company, Defendant-Appellee.

Nos. 98-1906, 98-1950.   |   Argued June 8, 1999.   |   Decided Sept. 8, 1999.

Appeals from the United States District Court for the District of South Carolina, at Anderson. William B. Traxler, Jr., District Judge. (CA-98-471-8-21, CA-98-430-8-21)

**Attorneys and Law Firms**

Douglas Franklin Patrick, Sr., Covington, Patrick, Hagins, Stern & Lewis, Greenville, South Carolina; Donald Roscoe Moorhead, Donald R. Moorhead, P.A., Greenville, South Carolina, for Appellants.

Ellis Murray Johnston, II, Haynsworth, Marion, McKay & Guerard, Greenville, South Carolina, for Appellee.

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

**OPINION**

PER CURIAM:

*1 Plaintiffs-Appellants William Chastain and Robert Simpson filed actions against Duke Energy Corporation in the United States District Court for the District of South Carolina as a result of burn injuries they sustained in a steam pipe explosion at the Oconee Nuclear Station in Oconee County, South Carolina. The district court granted Defendant's motion for summary judgment, determining that Plaintiffs' exclusive remedy is under the South Carolina Workers' Compensation Law, S.C.Code Ann. § 42-1-10 *et seq.* (Law.Co-op.1985). On appeal, Plaintiffs challenge the court's determination, arguing primarily that the court should have certified certain questions to the state supreme court for resolution. Finding no error, we affirm the district court's decision.

**I.**

Plaintiffs-Appellants William Chastain ("Chastain") and Robert Simpson ("Simpson"), along with five other workers, were injured on September 24, 1996 when a steam pipe exploded at the Oconee Nuclear Station in Oconee County, South Carolina. At the time of the accident, both Chastain and Simpson were employees of Duke Energy Corporation ("Duke Energy") and were acting within the course of their employment.

Three days after the accident, Duke Energy filed a report regarding the injuries with the South Carolina Workers' Compensation Commission ("Commission"), as is required under S.C.Code Ann. § 42-19-10. Thereafter, both Chastain and Simpson began to receive benefits under the South Carolina Workers' Compensation Law (the "Act"). Chastain received temporary benefits totaling $17,648.45. On October 24, 1997, his case was heard by the Commission, and he was awarded an additional $71,055.16 for a total compensation benefit of $80,073.61. Duke Energy also paid medical benefits of $319,557.68 on his behalf. Simpson received temporary benefits totaling $17,136.32. Duke Energy also paid medical benefits of $551,808.86 on his behalf. Simpson has not yet sought a final hearing before the Commission.

Both Chastain and Simpson filed diversity actions against Duke Energy in the United States District Court for the District of South Carolina as a result of the burn injuries they sustained in the accident. They maintain that Duke Energy was negligent in failing to design, fabricate, operate, and inspect the Nuclear Station's piping and associated systems and components properly.

Duke Energy filed answers to both actions on March 9, 1998 and later moved for summary judgment with respect to both suits. The district court held a hearing on the motions, where Chastain and Simpson argued that § 42-5-250 of the South Carolina Code of Laws [1] provides them with a common law right of action against Duke Energy. Chastain

and Simpson also urged the district court to certify certain issues regarding the interpretation of § 42-5-250 to the South Carolina Supreme Court. The district court granted Duke Energy's motions and dismissed both cases.

Both Simpson and Chastain filed timely Notices of Appeal. This Court, on August 14, 1998, consolidated both appeals for purposes of briefing and oral argument. Because we find no error in the district court's decision, we affirm.

## II.

**\*2** Appellants requested that the district court certify the following issues to the South Carolina Supreme Court under the certification procedure authorized by Rule 228 [2] of the South Carolina Appellate Court Rules:

1. Does § 42-5-250 of the South Carolina Code of Laws (1976) permit an employee to sue his employer under a general negligence theory if his injury was caused by a "single catastrophic hazard" as defined under the statute?

2. If § 42-5-250 of the South Carolina Code of Laws (1976) removes injuries occasioned by "single catastrophic hazards" from the South Carolina Workers' Compensation Act, can an employer claim election of remedies if workers' compensation benefits have been paid to the employee?

3. Can an employer force its employee to proceed under the doctrine of election of remedies if the employer files for workers' compensation benefits on behalf of an employee who was injured in a "single catastrophic hazard" as defined under § 42-5-250 of the South Carolina Code of Laws?

Even though § 42-5-250 has not been interpreted by the South Carolina courts, the district court found it unnecessary to certify any of the issues outlined above to the state supreme court. Appellants argue that the lack of state precedent directly interpreting § 42-5-250 should have prompted the court to certify the issues, so the court's decision was in error. We review a district court's refusal to certify a question to the state's highest court for abuse of discretion. *See Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (determining that use of certification procedure "rests in the sound discretion of the federal court"); *Boyter v. Commissioner of Internal Revenue Service,* 668 F.2d 1382, 1385 (4th Cir.1981).

Appellants insist that, while the decision to certify is within the court's discretion, the case law suggests there are broad guidelines that the court must follow. For example, in *Langley v. Pierce,* 993 F.2d 36 (4th Cir.1993), the Fourth Circuit pointed out that "[b]ecause the resolution of the contentions of the parties is a matter of South Carolina law, and it appears to us that there is no controlling precedent on point in the decisions of the Supreme Court of South Carolina, we believe [it] proper to certify to the Supreme Court of South Carolina for decision the question in this case." *Id.* at 37-38. Similarly, in *Grattan v. Board of School Commissioners of Baltimore City,* 805 F.2d 1160 (4th Cir.1986), we stated that certification "is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it." *Id.* at 1164 (denying appellant's certification request). Since there is no controlling precedent interpreting § 42-5-250, Appellants urge, certification to the state supreme court would be appropriate.

**\*3** To the contrary, there is no need for certification where the answer to the question sought to be certified is reasonably clear. The Fourth Circuit has emphasized that "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir.1994); *see also Smith v. FCX, Inc.,* 744 F.2d 1378, 1379 (4th Cir.1984) (determining certification was unnecessary since there was ample state precedent to guide the federal court as to the answer the state court would provide), *cert. denied,* 471 U.S. 1103 (1985). Even "[w]here there is no case law from the forum state which is directly on point, the district court [must] attempt[ ] to do as the state court would do if confronted with the same fact pattern." *Roe,* 28 F.3d at 407.

==We are especially hesitant to overrule the district court's decision denying certification where the party seeking certification is the same party that sought federal jurisdiction in the first place and, by extension, federal interpretation of state law. *See Smith,* 744 F.2d at 1379 (suggesting that it was inappropriate for party to request certification of issue to state supreme court where that party "sought and received a federal court's interpretation of state law").== Chastain and Simpson initiated their suits against Duke Energy in federal district court based on diversity jurisdiction. They chose the forum and, in so doing, opted for federal interpretation of the relevant provisions of the state Workers' Compensation Law. We are reluctant to find an abuse of discretion under such circumstances.

Because there exists sufficient sources of South Carolina law for us to render a reasoned and principled conclusion (see discussion below), certification is unnecessary. We, therefore, find no error in the district court's decision.

### III.

Concluding that the state Workers' Compensation Law provided the exclusive remedy for injuries arising from "a single catastrophe hazard," the district court granted Duke Energy's motion for summary judgment against Appellants' common law negligence claims. Appellants challenge the judgment, arguing that their injuries are outside the scope of the Act and, thus, exempt from the exclusive remedy rule. We review the court's grant of summary judgment, as well as its interpretation of the state workers' compensation statute, *de novo. See Roe,* 28 F.3d at 406-407;*see also Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (concluding that an appellate court should review *de novo* a district court's determination of state law).

The South Carolina Workers' Compensation Law provides the exclusive remedy against an employer for employees who are injured in the course of employment. The Act specifically provides:

> **\*4** The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.
>
> *Provided, however,* this limitation of actions shall not apply to injuries resulting from acts of a subcontractor of the employer or his employees or bar actions by an employee of one subcontractor against another subcontractor or his employees when both subcontractors are hired by a common employer.

S.C.Code Ann. § 42-1-540 (Law.Co-op.1985). In short, Section 42-1-540 bars all common law actions against an employer for accidental personal injury. S.C.Code Ann. § 42-1-540; *see also Cook v. Mack's Transfer & Storage,* 291 S.C. 84, 352 S.E.2d 296, 298 (S.C.App.1986) (stating that the exclusivity provision of the Act "bars all actions against an employer where a personal injury to an employee comes within the Act ... [making] the Act the exclusive means of settling all such claims"), *cert. denied,*292 S.C. 230, 355 S.E.2d 861 (S.C.1987).

The South Carolina courts have recognized narrowly-defined exceptions to the exclusive remedy provision of the Workers' Compensation Law. First, the statute itself expressly excludes claims for injuries that result from certain "acts of a subcontractor." S.C.Code Ann. § 42-1-540. In addition, since § 42-1-540 only bars actions arising out of "personal injury or death by accident," employees can maintain an action against their employer if the action is not based on a claim of personal injury. As such, it is beyond the scope of the Act. For example, in *Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 417 S.E.2d 538 (S.C.1992), the South Carolina Supreme Court permitted an employee to maintain a common law action for negligent supervision against her employer for a co-employee's alleged slander. *Id.* at 540.The court determined that a slander action did not constitute a personal injury claim and, thus, was not barred by the Act's exclusivity provision "since the gravaman of a slander action is injury to one's reputation."

*Id.* Similarly, in *Peay v. U.S. Silica Co.,* 313 S.C. 91, 437 S.E.2d 64 (S.C.1993), the state Supreme Court noted that § 42-1-540, which by its express terms only applies to accidents, does not bar a common law action if the employer "acted with deliberate or specific intent to injure the employee."*Id.* at 65.

Appellants argue that, under § 42-5-250, their injuries are similarly outside the scope of the Act. Section 42-5-250 states:

> **\*5** This Title shall not apply to policies of insurance against loss from explosion of boilers or flywheels or other similar single catastrophe hazards. But nothing contained in this section shall be construed to relieve the employer from liability for injury or death of an employee as a result of such explosion or catastrophe.

S.C.Code Ann. § 42-5-250. Appellants maintain that the provision effectively removes from the Act injuries caused by a single catastrophe hazard like the pipe explosion at issue here. Consequently, Appellants argue, if an employee's injury

is caused by such a hazard, he can sue his employer under a general negligence theory.

With this argument in mind, Appellants urge us to adopt the holding of a recent decision of the South Carolina Court of Common Pleas for Colleton County, *Pender v. Dogwood Hills Country Club, Inc.,* No. 98-CP-15-647 (May 11, 1999). In *Pender,* an employee was killed at work when an irrigation tank exploded. The wife and personal representative of the decedent brought a wrongful death action against her deceased husband's former employer, Dogwood Hills Country Club. The employer moved to dismiss the action on the ground that the plaintiff's claims were precluded by the exclusive remedy provision of the Workers' Compensation Law. Rejecting the motion, the court construed § 42-5-250 to allow the plaintiff to maintain the negligence action against the employer. The court determined that the plaintiff could recover any available insurance proceeds but could not recover more than the insurance coverage. "By excluding only insurance policies from the Act," the court concluded, "the legislature intended to allow employees to recover benefits in addition to the benefits under the Workers' Compensation Act, but at the same time not expose the employer to liability unless an insurance policy covered the loss." [3]

Because the state trial court's decision is not an authoritative statement of state law and, as an unpublished decision, lacks any precedential value, we decline to follow the holding in *Pender.* Where neither a state's supreme court nor its intermediate appellate courts have ruled on an issue, a federal court is not bound by an unpublished trial court decision. *See King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 160-61, 68 S.Ct. 488, 92 L.Ed. 608 (1948) (determining that decision of South Carolina Court of Common Pleas not binding on federal district court); *see also Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (noting that "while the decrees of 'lower state courts' should be 'attributed some weight ... the decision [is] not controlling ...' where the highest court of the State has not spoken on the point"). In South Carolina, decisions of a common pleas court are accorded little weight. They are " 'binding solely upon the parties who are before the Court in that particular case and would not constitute a precedent in any other case in that Court or in any other court in the State of South Carolina.' " *King,* 333 U.S. at 492. "[I]t would be incongruous ... to hold the federal court bound by a decision which would not be binding on any state court." *Id.* at 493. Instead, as a federal appellate court, we must attempt to predict how the state's highest court would rule if confronted with the issue. *See id.* at 492; *see also Bosch,* 387 U.S. at 465 ("If there be no decision by [the state's highest court] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."). Having reviewed the statutory scheme and relevant case law, we believe the state supreme court, if faced with interpreting § 42-5-250, would decide contrary to the trial court's ruling in *Pender.*

**\*6** First, as Duke Energy correctly points out, all other exceptions to the exclusive remedy rule existing under South Carolina law are anchored in the plain language of § 42-1-540. As explained above, the provision expressly excludes claims for injuries resulting from certain "acts of a subcontractor," S.C.Code Ann. § 42-1-540, and, by definition, any action not based on an accidental personal injury. In contrast, Appellants attempt to force an unrelated provision from a separate chapter of the Act governing workers' compensation insurance into the discussion of employees' rights and remedies outlined in § 42-1-540. State rules of statutory interpretation simply will not allow an expansion of the statute's operation based on such a random and forced construction of law. *See Adams v. Clarendon County School District No. 2,* 270 S.C. 266, 241 S.E.2d 897, 900 (S.C.1978) (determining that statutory section cannot be read in isolation or interpreted so as to ignore or conflict with other provisions of the statute).

Second, a plain reading of the statute, *see Brooks v. Northwood Little League,* 327 S.C. 400, 489 S.E.2d 647, 650 (S.C.App.1997) (noting that South Carolina courts must "give statutes their plain and ordinary meaning where the statute's language is unambiguous"), makes clear that § 42-5-250 applies only to "policies of insurance." Indeed, the provision says so expressly and, additionally, it falls within the chapter entitled "Insurance and Self-Insurance." S.C.Code Ann. § 42-5-10 through 42-5-250 (Law.Co-op.1985); *see also T.W. Morton Builders, Inc. v. Buedingen,* 316 S.C. 388, 450 S.E.2d 87, 95 (S.C.App.1994) (noting that, when interpreting statute, court may use statute's title to show legislative intent). As an insurance provision, section 42-5-250 merely relieves employers of their obligation to carry insurance and comply with other insurance-related requirements where the injuries for which compensation is required are caused by single catastrophe hazards. It does not lessen or discharge employers from liability under the Act.

See § 42-5-250 (stating that "nothing contained in this section shall be construed to relieve the employer from liability for injury or death of an employee as a result of such explosion or catastrophe."). Nor does it provide an employee with a common law right of action for such injuries.

Appellants maintain that the effect of removing insurance policies for single catastrophe hazards from the Act is to remove injuries resulting from those hazards from the Act. They reason that insurers could refuse payment for such injuries, and, unless the employer had a special policy or rider covering single catastrophe hazards, the employer would be left with the loss. The picture Appellants paint is surely possible but not inconsistent with the plain meaning and legislative intent of the statute, by which we are bound. See Adams, 241 S.E.2d at 900 (commenting that in interpreting statutes, the court "must be mindful of the principle that the intention of the legislature is the primary guideline"). Under the Act, an employer who accepts the compensation provisions of the statute is liable to its employees for personal injury. To secure the payment of compensation to his employees, the employer must insure his liability through an insurance carrier or by self-insuring. S.C.Code Ann. §§ 42-5-10, 42-5-20 (Law.Co-op.1985). If the employer decides not to secure the payment through a carrier, he must furnish to the Commission "satisfactory proof of his financial ability to pay directly the compensation." S.C.Code Ann. § 42-5-20. So, employer liability exists under the Act independent of insurance coverage. Where "a remedy exists under the statute, the injured worker has no right to bring a common law action in the courts." Cook, 352 S.E.2d at 299.

*7 Our holding is consistent with the broad principles that informed the state's adoption of its workers' compensation system. As the South Carolina Court of Appeals has noted, the Workers' Compensation Law "was founded upon a recognition that it is desirable to discard the common law doctrines of tort liability in the employer-employee relationship and substitute a duty of the employer, regardless of fault, to compensate the employee, in predetermined amounts based upon his wages, for loss of earnings resulting from accidental injury arising out of and in the course of his employment." Id. at 298; see also Peay, 437 S.E.2d at 65 (noting that "[w]orkers' compensation laws were intended by the Legislature to relieve workers of the uncertainties of a trial for damages by providing sure, swift recovery for workplace injuries regardless of fault"). In exchange for the employer's assumption of any risk of work-related injuries, the employee is required "to surrender his right to sue at common law." Cook, 352 S.E.2d at 298. The workers' compensation system becomes the "exclusive means of settling all claims for personal injuries arising out of and in the course of an employment relationship." Id. at 299. Given the essential role exclusivity plays in the state's effort to compensate workplace injuries, see id. at 299-300 ("Exclusivity is not incidental to the system of workers' compensation; it is an essential feature of a comprehensive legislative plan for compensating workplace injuries."), we will not lightly read exceptions into that carefully crafted scheme. See Peay, 437 S.E.2d at 65 (determining that any exception to the exclusive remedy rule of § 42-1-540 must be narrowly construed). Rather, as is dictated by South Carolina law, we construe the statute liberally in favor of coverage. See id. (noting that "workers' compensation statutes are construed liberally in favor of coverage").

Since injuries arising from a "single catastrophe hazard" are not exempted from the Act's coverage, Appellants' sole remedy for such injuries is through the workers' compensation system. The district court was, therefore, correct in granting summary judgment against Appellants' negligence claims. Accordingly, the district court's decision is

*AFFIRMED.*

**Parallel Citations**

1999 WL 694444 (C.A.4 (S.C.))

Footnotes

1   Section 42-5-250 provides as follows: "This Title shall not apply to policies of insurance against loss from explosion of boilers or flywheels or other similar single catastrophe hazards. But nothing contained in this section shall be construed to relieve the employer from liability for injury or death of an employee as a result of such explosion or catastrophe." S.C.Code Ann. § 42-5-250 (Law.Co-op.1985).

2   Rule 228 permits federal courts to certify an unsettled question of state law to the South Carolina Supreme Court for resolution. The rule states that "[t]he Supreme Court in its discretion may answer questions of law certified to it by any federal court of the United States or the highest appellate court or an intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause

      then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." S.C.A.C.R. 228(a).

3    The trial court's reading of § 42-5-250 to imply a legislative intent to allow employees to recover benefits under the workers' compensation system and at common law is contrary to state law on the issue. It is well-established that an employee cannot obtain both workers' compensation benefits and common law damages. In *Boulware v. Mills,* 294 S.C. 24, 362 S.E.2d 184 (S.C.App.1987), for example, an employee was assaulted by a co-worker, filed a workers' compensation claim, and recovered benefits pursuant to the claim. The injured employee then filed a civil action for assault and battery against the co-worker and employer. *Id.* at 185. The South Carolina Court of Appeals dismissed the action, stating: "We do not interpret the law to mean the employee may recover workers' compensation and then proceed to file a suit against the employer under common law. Rather, ... in such a case the employee has the option to claim workers' compensation or sue his employer under the common law." *Id.* Similarly, in *McSwain v. Shei,* 304 S.C. 25, 402 S.E.2d 890 (S.C.1991), the South Carolina Supreme Court cautioned that "an employee may not recover under workers' compensation and at common law." *Id.* at 893.

---

**End of Document**          © 2015 Thomson Reuters. No claim to original U.S. Government Works.